**George P. RONIGER, Plaintiff,**

v.

**H. Carl McCALL, Individually and as Comptroller of the State of New York, and Rosemary Scanlon, Individually and as State Deputy Comptroller for the City of New York, Defendants.**

**No. 97 Civ. 8009(RWS).**

United States District Court,
S.D. New York.

Oct. 23, 2000.

Beranbaum Menken Ben–Asher, New York City by John A. Beranbaum, of counsel, for Plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City by Debo P. Adegbile, Robert S. Smith, of counsel, for Defendants.

*OPINION*

SWEET, District Judge.

Defendants H. Carl McCall ("McCall") and Rosemary Scanlon ("Scanlon") (collectively, "the Defendants") move for an order excluding the admission of certain of plaintiff George P. Roniger's ("Roniger") newspaper article exhibits, pursuant to Federal Rules of Evidence 401, 402 and 403. Roniger opposes the motion.

For the reasons set forth below, the motion will be granted in part and denied in part.

### Parties, Facts and Prior Proceedings

The parties, facts, and prior proceedings in this action are set forth in greater detail in the prior opinions of this Court, familiarity with which is presumed. *See Roniger v. McCall,* 72 F.Supp.2d 433 (S.D.N.Y. 1999) ("Roniger I"); *Roniger v. McCall,* 22 F.Supp.2d 156 (S.D.N.Y.1998) ("Roniger II"); *Roniger v. McCall,* 97 Civ. 8009, 2000 WL 1191078 (S.D.N.Y. Aug.22, 2000) ("Roniger III").

The claims remaining in this action are: (1) a First Amendment retaliation claim against McCall in his official capacity, pursuant to 42 U.S.C. § 1983, seeking equitable relief, and (2) a civil conspiracy claim against McCall and Scanlon individually, pursuant to 42 U.S.C. § 1985, seeking monetary damages.

From May of 1993 until approximately December 1, 1994, Roniger was employed in the Office of the State Deputy Comptroller for the City of New York ("OSDC"), a division of the Office of the State Comptroller. McCall at all relevant times was the Comptroller for the State of New York. As set forth in *Roniger I* and

*II,* Roniger has alleged that he was terminated from his position at the OSDC as a result of his politically embarrassing statements in deposition testimony concerning a June 29, 1993 letter that McCall sent to Standard & Poors (the "S & P Letter"), an agency that was known to be reviewing New York City's bond rating. Roniger gave this deposition testimony on August 12, 1994, in a suit filed by certain employees in the OSDC who had been fired by McCall, entitled *Westmeyer v. McCall,* No. 93 Civ. 8226(JSM) (the "Westmeyer Lawsuit"). Roniger testified *inter alia* that the S & P Letter "took too soft a position vis-a-vis the City."

Shortly thereafter, on September 14, 1994, the Bond Buyer, a newspaper serving the New York financial community, published an article headlined "State Comptroller Downplayed Plight of N.Y.C. Budget Woes, Top Aide Says." The Bond Buyer story described Roniger's testimony in the Westmeyer Lawsuit. This story was subsequently picked up by other newspapers. According to Roniger, in the wake of the negative publicity surrounding his testimony in the Westmeyer Lawsuit, McCall and Scanlon conspired to humiliate him and to remove him from the OSDC.

The instant motion was filed on May 12, 2000 and submissions were received through August 2, 2000, at which time the matter was deemed fully submitted. .

### Discussion

There are six categories of articles which the Defendants seek to exclude.[1]

### 1. *Category 1—Pl. Exh. 54*

■ Exhibit 54 is an article appearing in the Bond Buyer, headlined "McCall Denies Politics Caused Him To Dismiss N.Y. Analysts," on September 8, 1994. McCall objects to this article on the grounds that it is not relevant to Roniger's testimony in the Westmeyer Lawsuit and prejudicial

because it characterizes McCall's testimony in that litigation, quotes counsel for the Westmeyer plaintiffs, and rehashes the allegations from the Westmeyer pleadings.

Roniger contends that this article is relevant as "one of the flurry of articles that appeared in the aftermath of the Westmeyer suit that raised again the question of McCall's political independence." Whether or not McCall was motivated by his own personal interests in reelection and reputation, and to obtain retribution against Roniger as a result of personal embarrassment over the publicity surrounding Roniger's testimony, is relevant to Roniger's claims. *See Roniger II,* 72 F.Supp.2d at 441. However, Exhibit 54, which appeared before the September 14, 1994 Bond Buyer article that allegedly set off the controversy over Roniger's testimony, does not provide a sufficient link between Roniger's testimony and McCall's motivations. With respect to Roniger's testimony, the article simply mentions that Roniger was on the list of witnesses in the Westmeyer Lawsuit. It is also cumulative of other evidence expected at trial concerning the relationship between adverse publicity concerning McCall's political independence and his motivations for firing Roniger. Therefore, it is excluded.

### 2. *Category 2—Pl. Exhs. 36, 47 and 59*

■ Exhibits 36, 47 and 59 are newspaper articles published after Roniger was fired. The articles mention Roniger's testimony in the Westmeyer Lawsuit, characterize that testimony as critical of McCall, and report on Roniger's firing. The Defendants contend that these articles are irrelevant and, in addition, prejudicial because they characterize Roniger's testimony in the Westmeyer lawsuit and imply that he was terminated as a result of that testimony, which is an ultimate issue of fact for the jury in this case. Roniger contends that Exhibit 47 is relevant to

1. The Defendants have omitted certain of Roniger's proposed newspaper article exhibits from this motion, but reserve their rights to challenge their admissibility in light of the proof at trial.

impeach McCall as to the issue of whether he made a good faith effort to reassign Roniger, and that all three articles are relevant on the issue of damages. With respect to pain and suffering damages, he contends that he first learned of his termination through the newspaper, and that this was humiliating to him. With respect to economic damages, he contends that a reasonable jury could infer that the publicity surrounding his discharge, given that they reveal that he was the only McCall appointee discharged as of that time, harmed his chances of finding re-employment.

Insofar as the theory for the admissibility of Exhibit 47 is its impeachment value at trial, a ruling at this juncture would be premature. However, these articles are relevant to the issues of both economic and pain and suffering damages and their admission does not contravene Rule 403. Therefore, they will be admitted.

### 3. Category 3—Pl. Exhs. 16, 17, 19, 20 and 33

■ These articles were published in June 1993. They describe how McCall's office had issued a report that was highly critical of then-Mayor David Dinkins' ("Dinkins") administration's budget, the nature of the relationship between McCall and Dinkins, and how Dinkins and the editor of the Amsterdam News reacted adversely to McCall's report. The Defendants content that these exhibits are irrelevant because they were published more than a year before Roniger's deposition testimony and his dismissal and contain nothing more than reporters' speculations about the nature of McCall's relationship with Dinkins. The Defendants also contend that jury members may be improperly influenced by their views on Dinkins. Roniger, citing Yarborough v. City of Warren, 383 F.Supp. 676, 682 (E.D.Mich.1974) asserts that these articles are admissible to provide necessary historical background to the circumstances behind the signing of the S & P letter, the firing of the four

senior analysts' discharge in July 1993, and the ensuing Westmeyer Lawsuit in which Roniger gave his deposition testimony.

The difficulty with these articles is less relevance than it is hearsay. Roniger's case is premised on the theory that McCall's personal stake in his reelection and in restoring his reputation motivated Roniger's firing. See Roniger I, 72 F.Supp.2d at 441. Roniger's criticism of the S & P Letter pertained to McCall's allegedly compromised political independence due to McCall's personal political connection with Dinkins. See Roniger II, 22 F.Supp.2d at 168. These articles would be inadmissible hearsay if offered for the truth of the matters reported therein, even though those matters may be relevant to Roniger's case, such as whether the report issued by McCall was critical of the Dinkins administration, the nature of McCall's political relationship with Dinkins, and how Dinkins reacted to the report. See Yarborough, 383 F.Supp. at 681 (admitting newspaper articles as background because not offered to prove truth of matters reported). However, these articles are admissible as evidence relating to McCall's state of mind. As for prejudice, the possibility that jury members will be prejudiced against McCall based on their feelings about Dinkins is speculative at best and, in any event, it is expected that there will be other evidence that will reveal that McCall and Dinkins were close political allies. Therefore, these articles will be admitted.

### 4. Category 4—Pl.Exh. 22

This exhibit is an interview with McCall published in the Bond Buyer on July 23, 1993. The Defendants contend that this article, which was published more than a year before Roniger was fired, is irrelevant. Roniger contends that it is admissible for impeachment purposes because it contradicts testimony McCall gave during his deposition in this case concerning his reasons for signing the S & P Letter. A ruling at this juncture would be premature

given Ronger's impeachment theory of admissibility. Both parties may renew their contentions at such time as McCall testifies at trial and Roniger seeks to admit this item into evidence.

### 5. Category 5—Pl.Exhs. 22, 23, 24, 31, 32, 34–41, 43–45, 48–52, 55–58 [2]

■ These articles, all published in August 1993, concern the firings of the Westmeyer plaintiffs and the political aftermath of those events. The Defendants contend that these articles are irrelevant and, in addition, unduly prejudicial because they expose the jury to extensive newspaper coverage of another lawsuit against McCall. Roniger responds that they are relevant as context for the events leading to his discharge and that without these articles the jury will not be able to fully appreciate the scope of the controversy engendered by Roniger's deposition testimony.

On the one hand, there is a substantial potential for prejudice because these articles are replete with negative commentary regarding McCall in relation to the Westmeyer Lawsuit, including his political independence or lack thereof. On the other hand, the scope of the controversy surrounding Roniger's testimony is relevant to McCall's state of mind. Based on the instant submissions, however, it cannot be said that these August 1993 articles are necessary for the jury to fully appreciate the scope of the controversy stirred up by Roniger's testimony in August 1994. The submissions do not address other evidence that would be relevant to the scope of the controversy, including evidence pertaining to the post-September 14, 1994 period. See Roniger I, 72 F.Supp.2d at 434 (describing evidence that September 14, 1994

Bond Buyer article set off public controversy over Roniger's testimony including subsequent newspaper stories). Moreover, the case cited by Roniger, United States v. Romer, 148 F.3d 359, 368 (4th Cir.1998), is not persuasive here because the court's admission into evidence of a newspaper article to provide context occurred in very different circumstances. See id. at 368 (article admitted to illuminate conversation in which defendants referred to and discussed article). There is also the problem of cumulative evidence presented by admitting all of these articles. Therefore, these articles are deemed inadmissible. However, Roniger has leave to renew his request for the admission of some or all of these articles and to address the aforementioned concerns at an appropriate point at trial.

### 6.—Category 6—Pl.Exhs. 21, 25 53 [3]

■ These articles were published prior to Roniger's testimony in the Westmeyer Lawsuit and concern, first a Republican lawmaker who sought McCall's impeachment for politicizing the OSDC, second, McCall's criticisms of the budget plan of Dinkins' successor, Mayor Rudolph Giuliani, and third, a financial security analysis expressing surprise that S & P did not downgrade the City's credit rating in July 1993. The Defendants contend that these articles are irrelevant and unduly prejudicial. Roniger responds that they are relevant because they bear on the issue on the issue of McCall's politicized of the OSDC. States as such, this evidence runs afoul of the hearsay rule. In addition, the danger of unfair prejudice substantially outweighs their probative value. Therefore, these articles will be excluded.

**2.** In addition to the exhibits listed, both parties discuss Exhibit 26, which is the September 14, 1994 Bond Buyer article which allegedly set off the public controversy over Roniger's testimony. The high probative value of that evidence seems apparent. However, that article was not submitted in connection with the instant motion nor identified in

the Defendants' moving papers as a subject of its motion. Therefore, the references to this article are disregarded and no conclusion as to its admissibility is reached herein.

**3.** Exhibit 53 is referred to erroneously by both parties as Exhibit 54.

### Conclusion

Therefore, for the reasons set forth above, the Defendants' motion is granted in part and denied in part.

It is so ordered.